1
2
3
4
UNITED STATES DISTRICT COURT
5
NORTHERN DISTRICT OF CALIFORNIA
6
7   MARY MOORE, et al.,                          Case No. 19-cv-01519-HSG
8              Plaintiffs,                       **ORDER DENYING MOTION TO
                                                 REMAND**
9       v.
                                                 Re: Dkt. No. 17
10  ADDUS HEALTHCARE, INC., et al.,
11             Defendants.
12
13          Pending before the Court is Plaintiffs' motion to remand, briefing for which is complete.

14  Dkt. Nos. 17 ("Mot."), 22 ("Opp."), 23 ("Reply").  After carefully considering the parties'

15  arguments, the Court **DENIES** the motion.[1]

16  **I.     BACKGROUND**

17          On July 11, 2017, Plaintiff Mary Moore filed this putative class action in Alameda

18  Superior Court.  *See* Dkt. No. 1 Ex. A.  On March 21, 2019, an amended complaint was filed,

19  which added Alexandria Encinias as a Plaintiff and Addus HomeCare, Inc. as a Defendant.[2]  *See*

20  Dkt. No. 1-1 Ex. N ("FAC").  The operative complaint alleges that Moore and Encinias worked

21  for Defendants in California from approximately July 2011 to May 2014 and approximately July

22  2016 to September 2017, respectively, as hourly-paid, non-exempt employees.  *Id.* ¶¶ 19–20.

23  Plaintiffs seek to represent a class of "[a]ll current and former hourly-paid or non-exempt

24  individuals employed by any of the Defendants within the State of California at any time during

25  the period from July 11, 2013 to final judgment."  *Id.* ¶ 14.  Plaintiffs further seek to represent a

26

27  ---
    [1] The Court finds this matter appropriate for disposition without oral argument and the matter is
    deemed submitted.  *See* Civil L.R. 7-1(b).
28  [2] Defendants represent that the operative complaint erroneously sues "Addus HomeCare, Inc." and
    that the correct entity is "Addus HomeCare Corporation."  Opp. at 1.

subclass of "[a]ll current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from July 11, 2013 to final judgment who earned commissions/non-discretionary bonuses/non-discretionary performance pay which was not used to calculate the regular rate of pay used to calculate the overtime rate for the payment of overtime wages." *Id.*

All told, Plaintiffs bring ten causes of action on behalf of themselves and the putative class for Defendants' alleged failures to (1) pay overtime, (2) provide meal periods, (3) provide rest periods, (4) pay minimum wages, (5) pay timely wages upon termination, (6) pay timely wages during employment, (7) provide compliant wage statements, (8) keep complete or accurate payroll records, (9) reimburse necessary business expenses, and (10) generally conduct lawful business practices. *Id.* ¶¶ 51–131.

On March 22, 2019, Defendants removed this action to federal court under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Defendants explain that removal was only warranted once (1) Plaintiff Moore's February 20, 2019 interrogatory responses provided specific information on the frequency of Defendants' alleged wage-and-hour violations, and (2) Plaintiffs filed an amended complaint that included causes of action from which Defendants could ascertain the amount in controversy. Dkt. No. 1 ¶ 20.

## II.    LEGAL STANDARD

### A.    Removal Jurisdiction

A defendant may remove any civil action to federal court where the district court would have original jurisdiction over the action. 28 U.S.C. § 1441; *see also Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). To do so, a party seeking removal must file a notice of removal within 30 days of receiving the initial pleading or within 30 days of receiving "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(1), (3). The notice must contain a "short and plain statement of the grounds for removal." *Id.* § 1446(a); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

The removing party bears the burden of establishing removal jurisdiction. *Abrego Abrego*

2

*v. The Dow Chem. Co.*, 443 F.3d 676, 683–85 (9th Cir. 2006). A plaintiff may seek to remand a case to the state court from which it was removed if the district court lacks jurisdiction or if there was a defect in the removal procedure. 28 U.S.C. § 1447(c).

**B.    Class Action Fairness Act**

CAFA vests district courts with original jurisdiction over civil actions in which the amount in controversy exceeds $5 million, there is minimal diversity of citizenship between the parties, and the action involves at least 100 class members. 28 U.S.C. § 1332(d). Under CAFA, "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000." 28 U.S.C. § 1332(d)(6).

**C.    Amount-in-Controversy Requirement**

"[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014). "[T]he amount in controversy is not limited to damages incurred prior to removal[;]" instead, it "is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414–15 (9th Cir. 2018); *see also Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [a] defendant's liability.").

"Evidence establishing the amount [in controversy] is required . . . only when the plaintiff contests, or the court questions, the defendant's allegation." *Dart*, 135 S. Ct. at 554. "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.*; *see also Ibarra*, 775 F.3d at 1197 (same). "The parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Ibarra*, 775 F.3d at 1197 (internal quotation marks and citation omitted). "As with other important areas of our law, evidence may be direct or circumstantial." *Id.* at 1199.

An assessment of the amount in controversy "may require a chain of reasoning that

3

includes assumptions[, which] . . . . cannot be pulled from thin air but need some reasonable ground underlying them." *Id.* In other words, "a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.* at 1197. Ultimately, "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Id.* at 1198.

## III.    DISCUSSION

Plaintiffs' only objection to removal jurisdiction concerns whether Defendants have established that CAFA's amount-in-controversy requirement is met. Defendants support their estimate of the amount in controversy with (1) two declarations from Gary McLaughlin, attorney for Defendants, *see* Dkt. Nos. 1-1 ("McLaughlin Decl."), 22-1; (2) Plaintiff Moore's responses to Defendants' special interrogatories, *see* McLaughlin Decl. Ex. P; and (3) two declarations from Nicole Zdeb, the human resources vice president for Addus Healthcare, Inc., *see* Dkt. Nos. 1-25, 22-4. Plaintiffs declined to submit any evidence in response, even after the Court provided them an additional opportunity to do so. *See* Opp. at 4 (contending that "Plaintiffs need not rebut Defendants' conjectures with their own evidence to prevail on their Motion"); Dkt. No. 39 (providing Plaintiffs an additional opportunity to submit evidence); Dkt. No. 41 (responding to the Court's invitation by stating that "Plaintiffs do not intend to submit evidence with regards to whether CAFA's amount-in-controversy is met and will rest on their submissions").

The Court turns first to Plaintiffs' overarching challenges to the competency of Defendants' evidence in support of CAFA jurisdiction before turning to Defendants' amount-in-controversy calculations.

### A.    Competency of Evidence

Plaintiffs present two general challenges to the competency of Defendants' evidence, neither of which is persuasive. First, Plaintiffs contend that Defendants' declarations filed in support of removal are not competent evidence. Mot. at 4–9; Reply at 3. Plaintiffs in particular take issue with Defendants' supposed failure to "provid[e] one single supporting business record, spreadsheet, or other document," to support their calculations. Mot. at 4. But "[t]here is no need,

under the circumstances presented, for Defendant[s] to provide the business records themselves." *Black v. T-Mobile USA, Inc.*, No. 17-cv-04151-HSG, 2017 WL 5257110, at  *4 (N.D. Cal. Nov. 2, 2017); *see also Lewis*, 627 F.3d at 397; *Altamirano v. Shaw Indus., Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, at *10 (N.D. Cal. June 14, 2013) (rejecting argument that the defendants have to produce records for precise calculations because "requiring Defendants to produce this information would amount to requiring them to prove up Plaintiff's case on the merits").  It is instead sufficient, at this stage, for Defendants to submit declarations with sufficient foundation. *Id.*  And sufficient foundation exists here because the relevant declarants are (1) a human resources executive who attests to basic facts based on her normal business responsibilities and her personal review of Defendants' business records; and (2) defense counsel, who calculated figures based on business data provided by Defendants.  As Defendants note, courts routinely consider such declarations summarizing business records relevant to putative class members when assessing whether the amount-in-controversy requirement is met for purposes of CAFA jurisdiction.  Opp. at 6–7 (collecting cases).

Plaintiffs' second threshold dispute concerns Defendants' purported failure to explain how they calculated an average hourly rate for putative class members of at least $10.50.  Mot. at 5–6.  But Plaintiffs' only authority to reject the use of average hourly rates appears to be an outlier.  *See Weston v. Helmerich & Payne Int'l Drilling Co.*, No. 1:13-cv-01092-LJO-JLT, 2013 WL 5274283, at *5–6 (E.D. Cal. Sept. 17, 2013).  The overwhelming majority of courts—including this one—have considered reasonable averages like Defendants' in evaluating whether CAFA's amount-in-controversy requirement is met.  *See Black*, 2017 WL 5257110, at *4; *see also Sanchez v. Russell Sigler, Inc.*, No. CV 15-01350-AB (PLAx), 2015 WL 12765359, at *5 (C.D. Cal. Apr. 28, 2015) (explaining that "it is hard to imagine a more useful metric than the putative class's average hourly wage"); *Leos v. Fed. Express Corp.*, No. 2:14-cv-02864-ODW(AGRx), 2014 WL 2586866, at *7 (C.D. Cal. June 10, 2014) (approving use of average hourly wages in similar circumstance); *Deaver v. BBVA Compass Consulting & Benefits, Inc.*, No. 13-cv-00222-JSC, 2014 WL 2199645, at *7 (N.D. Cal. May 27, 2014) (considering putative class members' average hourly wages to calculate amount in controversy for meal and rest period claims); *Bryant v. Serv.*

*Corp. Int'l*, No. C 08-01190 SI, 2008 WL 2002515, at *4 n.3 (N.D. Cal. May 7, 2008) (finding use of plaintiff's average hourly wage "an appropriate substitute" for the class for purposes of removal jurisdiction); Opp. at 7–8 (citing additional cases). The Court agrees with the overwhelming majority of cases and finds that that in the context of calculating the amount in controversy for wage-and-hour labor violations, Defendants may rely on their sufficiently-supported average hourly rates.

### B. Plaintiffs' Final Pay Claim Places at Least $1.7 Million in Controversy

Defendants first amount-in-controversy calculation concerns Plaintiffs' allegation that Defendants failed to pay all wages owed to employees upon termination of their employment. Dkt. No. 1 ¶ 32; Opp. 8–12.

Under California Labor Code § 203 ("Section 203"), "[i]f an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Labor Code § 203(a). And the operative complaint here alleges that Defendants engaged in a "systemic scheme of wage abuse" involving, among other things, "failing to pay [hourly-paid or non-exempt California employees] for all hours worked, missed meal periods and rest breaks." FAC ¶ 27. Plaintiffs further allege that class members are owed "the statutory penalty wages for each day they were not paid, up to a thirty (30) day maximum pursuant to California Labor Code section 203." *Id.* ¶ 91.

Given Plaintiffs' allegations of systematic violations potentially warranting maximum penalties under Section 203, Defendants contend that the total amount in controversy relevant to Plaintiffs' Section 203 claim is at least $1,701,000. *See* Dkt. No. 1 ¶ 32. Defendants specifically state that: (1) "[a]pproximately 1,200 or more putative class members are former employees whose employment terminated since July 11, 2014," the date before which the relevant statute of limitations would bar claims; and (2) "[t]he average shift length for putative class members is over 4.5 hours, and putative class members earned more than $10.50 per hour on average." *Id.* Thus, according to Defendants, the Section 203 amount-in-controversy calculation "is at least

$1,701,000 (30 × 4.5 × $10.50 × 1,200 = $1,701,000)." *Id.*

Aside from challenging the competency of Defendants' declarations, as discussed above, Plaintiffs' only objection to Defendants' Section 203 amount-in-controversy calculation concerns the use of maximum penalties. Mot. at 9–11. Plaintiffs in particular contend that the Ninth Circuit has twice foreclosed such maximum-penalty calculations. *Id.* at 10 (citing *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994 (9th Cir. 2007); *Garibay v. Archstone Cmtys., LLC*, 539 F. App'x 763 (9th Cir. 2013)). But as Defendants point out, *Lowdermilk* relied on a "legal certainty" standard of proof since overruled by the Ninth Circuit. Opp. at 11; *see also Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013) (explaining that *Lowdermilk*'s standard "has been effectively overruled"). *Garibay* is similarly unavailing. For one, it has no precedential weight as an unpublished opinion. *See* CTA9 Rule 36-3 ("Unpublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion."). More important, to the extent *Garibay* requires removing defendants to submit evidence of liability to prove up a maximum-penalty calculation, it appears to be inconsistent with published Ninth Circuit opinions. *See Lewis*, 627 F.3d at 400 ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability. To establish the jurisdictional amount, Verizon need not concede liability for the entire amount, which is what the district court was in essence demanding by effectively asking Verizon to admit that at least $5 million of the billings were 'unauthorized' within the meaning of the complaint.") (internal citation omitted); *see also Mejia v. DHL Express (USA), Inc.*, No. CV 15-890-GHK (JCx), 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) ("Moreover, to the extent that *Garibay* demands that removing defendants submit evidence of their liability-i.e., evidence of a violation rate—to establish jurisdiction, it is inconsistent with *Lewis*."); *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1041 n.4 (N.D. Cal. 2014) ("Finally, this Court acknowledges that it cannot fully reconcile the *Lewis* approach with the approach apparently taken by the Ninth Circuit in [*Garibay*]. . . . Faced with this potential conflict, this Court accepts the Ninth Circuit's published opinion as the superior authority.").

Because the Court finds there is no per-se bar to using maximum penalties to calculate the

amount in controversy for purposes of CAFA jurisdiction, the question is whether reasonable assumptions drawn from allegations in the operative complaint warrant such calculations. And Defendants here have proved as much. Defendants note that "Plaintiffs allege that putative class members who are former employees are owed penalties because Defendants have *never* paid the amounts due as a result of the underlying wage and hour violations—not that Defendants merely paid these amounts later than required." Opp. at 9. And Plaintiffs allege a "uniform policy and systematic scheme" of unremedied wage-and-hour violations. FAC ¶ 27. Accepting these allegations as true, a reasonable inference drawn from the operative complaint is that Defendants systematically underpaid all employees and never paid departing employees what they were owed. If that is true, former employees might be entitled to maximum statutory penalties. Thus, Defendants' use of maximum penalties to calculate the amount in controversy in this circumstance is reasonable.

### C. Plaintiffs' Wage Statement Claim Places at Least $586,500 in Controversy

Defendants' second amount-in-controversy calculation concerns Plaintiffs' allegation that Defendants failed to provide accurate wage statements. Dkt. No. 1 ¶ 33; Opp. at 12–13.

California Labor Code § 226 ("Section 226") provides statutory penalties for failure to provide accurate wage statements in the amount of "fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period." Cal. Labor Code § 226(e)(1). And as is also relevant here, Plaintiffs allege that Defendants engaged in a "systemic scheme of wage abuse" involving, among other things, "failing to pay [hourly-paid or non-exempt California employees] for all hours worked, missed meal periods and rest breaks." FAC ¶ 27.

Given Plaintiffs' allegations of pervasive violations which would result in pervasively inaccurate wage statements giving rise to penalties under Section 226, Defendants contend that the total amount in controversy relevant to Plaintiffs' Section 226 claim is at least $586,500. Dkt. No. 1 ¶ 33. Defendants specifically state that: (1) "[a]t any given time [during the relevant statutory period], there have been at least 230 or more putative class members employed in California"; and (2) "[t]hese employees were paid bi-weekly." *Id.* Thus, according to Defendants, the Section 226

amount-in-controversy calculation is: (230 (initial violations) × $50) + (5,750 (subsequent violations)[3] × $100) = $586,500. *Id.*

Plaintiffs' only objection to Defendants' present calculation concerns the use of a 100% violation rate. Mot. at 12. Plaintiffs contend that "[n]owhere in the FAC do [they] allege that all wage statements were inaccurate," and that "Defendants do not produce any evidence suggesting that every single wage statement for every class member failed to state the accurate number of hours worked." *Id.* But it is reasonable to infer that Plaintiffs have called into question the accuracy of every wage statement given that they allege a "uniform" and "systemic" pattern of various wage-and-hour violations. *See* FAC ¶ 27. And as Defendants highlight, Plaintiff Moore alleges that she experienced relevant wage-and-hour violations every day she worked. Opp. at 12–13. If true, and if Plaintiff Moore is typical of putative class members, it is reasonable to assume that each wage statement is sufficiently "in dispute" to merit inclusion in the amount-in-controversy calculation. *See Lewis*, 627 F.3d at 400.

### D. Plaintiffs' Meal and Rest Break Claims Place at Least $3.2 Million in Controversy

Defendants' third amount-in-controversy calculation concerns Plaintiffs' allegation that Defendants failed to provide class members required meal and rest breaks. Dkt. No. 1 ¶¶ 34–35; Opp. at 14–15.

The operative complaint alleges that "class members are entitled to recover from Defendants one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided" under California Labor Code § 226.7(b) and an applicable Industrial Welfare Commission Wage Order. FAC ¶ 70. To ascertain a fair measure of how often Plaintiffs maintain Defendants failed to provide required meal and rest breaks, Defendants rely on Plaintiff Moore's responses to interrogatories on the subjects. Dkt. No. 1 ¶¶ 34–35. Plaintiff Moore was asked to "provide[d] her best estimate of the frequency of meal period-eligible shifts (i.e., shifts over 5 hours in length) on which [she] allege[s] [she] experienced

---

[3] (230 (employees) × 26 (pay periods)) - 230 (initial violations) = 5,750 subsequent violations.

violations by not being provided with a compliant meal period" and her "best estimate of the frequency of rest period-eligible shifts (i.e., shifts 3.5 hours in length or longer) on which [she] allege[s] [she] experienced violations by not being provided with one or more compliant rest period(s)." McLaughlin Decl. Ex. P, at 3–4. Plaintiff Moore responded that she experienced meal period violations on approximately 70% of eligible shifts and that she experienced at least one rest period violation per eligible shift. *Id.* at 1.

Given that Plaintiff Moore alleges that her claims are typical of all class members, Defendants contend that the total amount in controversy relevant to Plaintiffs' meal and rest break claims is at least $3,219,000. Dkt. No. 1 ¶¶ 34–35; *see also* FAC ¶ 16. Defendants specifically state that (1) "[t]here were 118,000 or more meal period-eligible shifts . . . worked by putative class members" during the relevant statutory period; (2) "[t]here were 224,000 or more rest period-eligible shifts . . . worked by putative class members" during the same relevant statutory period; and (3) "putative class members earned more than $10.50 per hour on average during this period." *Id.* Thus, according to Defendants, the meal period amount-in-controversy calculation is: 118,000 (eligible shifts) × 0.7 (alleged violation rate) × $10.50 = $867,000. And Defendants' rest break amount-in-controversy calculation is: 224,000 (eligible shifts) × 1.0 (alleged violation rate) × $10.50 = $2,352,000. *Id.* Together, these calculations total $3,219,000.

Plaintiffs' only substantive response to Defendants' meal and rest break premium calculations is that "Defendants provide no reasonable basis for assuming that the putative class members experienced" violations at the proffered rates. Mot. at 12; *see also id.* at 14 (arguing Defendants assumptions "are not based on a single fact."). But every case on which Plaintiffs rely involved defendants that put forward no evidence whatsoever to support violation rates. *See* Mot. at 13–14 (citing, in order, *Armstrong v. Ruan Transp. Corp.*, No. EDCV 16-1143-VAP (SPx), 2016 WL 6267931, at *3 (C.D. Cal. Oct. 25, 2016) (explaining that Defendants put forward no factual support at all to support a 100% violation rate); *Ibarra*, 775 F.3d at 1198–99 (explaining that a 100% violation rate is not a reasonable assumption from the mere allegation of a "pattern and practice" of misconduct); *Letuligasenoa v. Int'l Paper Co.*, No. 5:13-cv-05272-EJD, 2014 WL 2115246, at *5 (N.D. Cal. May 20, 2014) (explaining that "there [was] no evidence or allegations

upon which one [could] adduce a 100% violation rate"); *Weston*, 2013 WL 5274283, at *6 (explaining that the defendant put forward "no factual underpinning" whatsoever for the proffered violation rate); *Ray v. Nordstrom, Inc.*, No. 2:11-cv-07277-JHN-CWx, 2011 WL 6148668, at *3 (C.D. Cal. Dec. 9, 2011) (same); *Ruby v. State Farm Gen. Ins. Co.*, No. C 10-02252 SI, 2010 WL 3069333, at *4 (N.D. Cal. Aug. 4, 2010) ("Based on the allegations in the complaint, there is no basis for assuming that every employee missed a meal period and a rest period every workweek during the entire class period.")). Here, on the other hand, Defendants rely on Plaintiff Moore's own purported violation rate, which Defendants fairly extrapolated to putative class members given that Moore purports to bring claims typical of the class. *See Hernandez v. Starbucks Corp.*, No. CV 17-3150-JFW (SKx), 2017 WL 2971858, at *2 (C.D. Cal. July 12, 2017) (rejecting defendants' unsupported 100% violation rate, but finding reasonable a 70% violation rate based on extrapolating from the plaintiff's experience to the putative class).

All told, the Court finds reasonable at this stage a violation rate for the putative class that is extrapolated from violation rates of a purportedly typical plaintiff.

### E.    Attorneys' Fees

For the foregoing reasons, the Court finds that Plaintiffs' final pay, wage statement, meal period, and rest break claims place more than $5 million in controversy—$1,701,000 + $586,500 + $3,219,000 = $5,506,500.  The Court thus need not consider whether potential attorneys' fees are sufficiently in dispute for purposes of the amount-in-controversy requirement.  *See* Dkt. No. 1 ¶ 36 (contending that such fees "would place an additional $1,376,625 or more in controversy").

## IV.    CONCLUSION

The Court **DENIES** Plaintiffs' motion to remand.

**IT IS SO ORDERED.**

Dated: 8/7/2019

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge