1

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7    MARY MOORE,                              Case No. 19-cv-01519-HSG

8                      Plaintiff,             **ORDER DENYING MOTION FOR
                                              CLASS CERTIFICATION**
9            v.
                                              Re: Dkt. No. 72
10   ADDUS HEALTHCARE, INC., et al.,

11                     Defendants.

12

13          Pending before the Court is Named Plaintiff's ("Plaintiff") motion for class certification

14   *See* Dkt. No. 72 ("Mot."), 81 ("Opp."), 82 ("Reply").  On August 27, 2020, the Court held a

15   hearing on the motion for class certification.  Dkt. No. 84.  After carefully considering the parties'

16   arguments, and for the reasons set forth below, the Court **DENIES** the motion for class

17   certification.

18   **I.      BACKGROUND**

19          On July 11, 2017, Plaintiff Mary Moore filed this putative wage and hour class action

20   against Addus Healthcare, Inc. in Alameda Superior Court.  *See* Dkt. No. 1-2 Ex. A.  On March

21   21, 2019, an amended complaint was filed, adding Alexandria Encinias as a Plaintiff and Addus

22   HomeCare, Inc. as a Defendant.   *See* Dkt. No. 1-15 Ex. N ("FAC").  Defendants ("Addus")

23   removed this action to federal court under the Class Action Fairness Act ("CAFA"), 28 U.S.C.

24   § 1332(d).  *See* Dkt. No. 1.  On August 7, 2019, the Court denied Plaintiff's motion to remand.

25   *See* Dkt. No. 17.

26          The operative complaint alleged that Moore and Encinias worked for Addus in California

27   between approximately July 2011 and May 2014 and approximately July 2016 and September

28   2017, respectively, as hourly-paid, non-exempt employees.  FAC at ¶¶ 19–20.  Addus provides

United States District Court
Northern District of California

United States District Court
Northern District of California

home care services for individuals that need assistance in caring for themselves.  Dkt. No. 72-1, Declaration of Tatiana G. Avakian ("Avakian Decl."), Exhibit 1 at 125:14–15.  During the class period, Addus has operated ten branch offices in California.  Avakian Decl., Exhibit 2 at 9:16-10:12.  Addus employs direct care workers ("home care aides" or "caregivers") who provide personal care services, such as grooming, bathing, meal preparation, and other tasks clients are unable to perform by themselves, in the clients' homes.  Dkt. No. 81-1, Declaration of Gary M. McLaughlin ("McLaughlin Decl."), Exhibit B at 125:9-126:5; 149:14-16.  Caregivers are assigned to an Addus branch office and service clients associated with that office.  *Id.* at 131:3-7.  Addus also employs administrative employees who work in the branch offices.  *Id.* at 155:4-156:11. Administrative positions that are hourly-paid include service coordinators, office assistants, and payroll coordinators.  *Id.*  Service coordinators assist in a variety of areas, such as processing payroll, scheduling caregivers, covering the front desk, and training caregivers.  *Id.* at 152:24-153:19. 213:5-9.  Office assistants may assist in filing paperwork and answering phone calls, and payroll coordinators assist in preparing and processing payroll.  *Id.* at 152:24-153:19, 154:19-25.

Moore and Encinias originally alleged ten causes of action on behalf of themselves and the putative class for Defendants' alleged failures to (1) pay overtime, (2) provide meal periods, (3) provide rest periods, (4) pay minimum wages, (5) pay timely wages upon termination, (6) pay timely wages during employment, (7) provide compliant wage statements, (8) keep complete or accurate payroll records, (9) reimburse necessary business expenses, and (10) generally conduct lawful business practices under the Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200.  FAC at ¶¶ 51–131.

On January 10, 2020, the Court dismissed Plaintiff Encinias for failure to prosecute.  *See* Dkt. No. 61.  Plaintiff Moore now moves for class certification.

## II.     LEGAL STANDARD

Plaintiffs bear the burden of showing by a preponderance of the evidence that class certification is appropriate under Rule 23 of the Federal Rules of Civil Procedure.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).  Class certification is a two-step process.  First, Plaintiffs must establish that each of the four requirements of Rule 23(a) is met: numerosity,

commonality, typicality, and adequacy of representation. *Id.* Second, Plaintiffs must establish that at least one of the bases for certification under Rule 23(b) is met. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Where, as here, Plaintiffs seek to certify a class under Rule 23(b)(3), they must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013) (quoting *Wal–Mart*, 564 U.S. at 351). Nevertheless, Rule 23 does not permit "free-ranging merits inquiries at the certification stage." *Id.* at 466. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* If a court concludes that the moving party has met its burden of proof, the court has broad discretion to certify the class. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001).

## III.   ANALYSIS

Plaintiff moves to certify a class of "All current and former hourly-paid or non-exempt individuals employed by any of the Defendants within the State of California at any time during the period from July 11, 2013 to final judgment." Mot. at 9. Specifically, Plaintiff seeks class certification for the following claims: (1) failure to provide meal breaks, in violation of Labor Code §§ 226.7, 512; (2) failure to provide rest breaks, in violation of Labor Code § 226.7; (3) failure to pay wages (minimum and overtime), in violation of Labor Code §§ 510, 1194, 1197; (4) failure to reimburse business related expenses, in violation of Labor Code § 2802; (5) failure to provide accurate wage statements, in violation of Labor Code § 226; (6) failure to pay all wages upon termination, in violation of Labor Code § 226;[1] and (7) violation of California's Unfair

---

[1] Each Labor Code claim also alleges a violation of the corresponding IWC Wage Order. Because Plaintiff fails to specify which Wage Order applies to each claim, the Court tracks Plaintiff's approach and uses the generic term "Wage Order" throughout this Order.

1    Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL") based on unfair acts and

2    practices detailed in the previous claims. *See id.* at 9–10.

3        Addus opposes Plaintiff's motion on several grounds. First, Addus argues that Plaintiff

4    cannot bring her claims under the Labor Code and Wage Order because those causes of action

5    were dismissed with Plaintiff Encinas. Opp. at 6. Second, Addus claims that because Plaintiff

6    brought the same meal break claim before the California Labor Commissioner in 2014, she is

7    collaterally estopped from bringing the claim in this case, and relatedly is barred from bringing a

8    claim for failure to pay wages for "off-the-clock" work by the doctrine of res judicata. *Id.* at 6–8.

9    Third, Addus contends that Plaintiff cannot represent direct care workers because she cannot show

10   typicality, adequacy, or predominance. *Id.* at 8–19. Finally, Addus argues that the Court should

11   deny class certification even as to a class of administrative employees because common issues do

12   not predominate. *Id.* at 19–25.

### A.    Labor Code and Wage Order Claims

14       On January 10, 2020, the Court granted Plaintiffs' counsel's motion to withdraw as

15   attorney for Plaintiff Encinias and dismissed Plaintiff Encinias for failure to prosecute. *See* Dkt.

16   No. 61 ("Order"). In the Order, the Court explained that "[b]ecause Plaintiff Encinias alone

17   brought the first through ninth causes of action in the Amended Complaint, the Court dismisses

18   without prejudice those causes of action." *Id.* at 6 n.2. Plaintiffs' counsel was further notified that

19   once she "has found a proper replacement, she may file a motion for leave to amend the

20   pleadings." *Id.*

21       Plaintiffs' counsel did not seek leave to amend the pleadings in order to allege that Plaintiff

22   Moore brings the same California Labor Code and Wage Order violations, and thus only the UCL

23   cause of action remains. *See* FAC at ¶¶ 115–131. Accordingly, the Court agrees with Addus that

24   Plaintiff cannot bring claims under the California Labor Code or Wage Order. The only claim that

25   remains is Plaintiff's UCL claim for unfair labor practices.

### B.    Collateral Estoppel and Res Judicata

27       The related doctrines of res judicata and collateral estoppel limit the ability of litigants to

28   relitigate matters. Under the doctrine of res judicata (also known as the claim preclusion

United States District Court
Northern District of California

1    doctrine), "a final judgment on the merits of an action precludes the parties or their privies from

2    relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S.

3    90, 94 (1980). "Under collateral estoppel [also known as the issue preclusion doctrine], once a

4    court has decided an issue of fact or law necessary to its judgment, that decision may preclude

5    relitigation of the issue in a suit on a different cause of action involving a party to the first case."

6    *Id.* Res judicata not only bars every claim that was raised in the earlier action, but also bars the

7    assertion of every legal theory or ground for recovery that might have been raised in support of

8    granting the desired relief. *See McClain v. Apodaca*, 793 F.2d 1031, 1034 (9th Cir. 1986).

9          "Federal courts give a state judgment the same preclusive effect that that judgment would

10   receive in state court." *San Remo Hotel v. City and County of San Francisco*, 145 F.3d 1095,

11   1103 (9th Cir. 1998). Thus, under California law, collateral estoppel requires the following

12   criteria to be satisfied:

13           First, the issue sought to be precluded from relitigation must be
     identical to that decided in a former proceeding. Second, this issue

14           must have been actually litigated in the former proceeding. Third, it
     must have been necessarily decided in the former proceeding. Fourth,

15           the decision in the former proceeding must be final and on the merits.
     Finally, the party against whom preclusion is sought must be the same

16           as, or in privity with, the party to the former proceeding.

17   *Lucido v. Superior Court*, 795 P.2d 1223, 1225 (Cal. 1990).

18         Addus argues that Plaintiff is collaterally estopped from bringing her meal break claim

19   because the California Labor Commissioner determined that exact issue in Addus's favor in 2014.

20   Opp. at 6–7. The California Supreme Court has held that "[c]ollateral estoppel may be applied to

21   decisions made by administrative agencies" where "an administrative agency is acting in a judicial

22   capacity and resolves disputed issues of fact properly before it which the parties have had an

23   adequate opportunity to litigate." *People v. Sims*, 32 Cal. 3d 468, 479 (Cal. 1982) (quoting *United

24   States v. Utah Constr. Co.*, 384 U.S. 394 (1966)). A court should also consider whether there are

25   "particular and special circumstances" presented by the "unique statutory scheme" at issue that

26   permit application of the doctrine. *Lucido*, 795 P.2d at 1227. Addus, as the party asserting

27   collateral estoppel, bears the burden of establishing that these requirements are met. *See id.* at

28   1225.

United States District Court
Northern District of California

1    Here, Addus falls well short of its burden.  Addus provides no analysis of whether the

2    parties had an adequate opportunity to litigate before the Labor Commissioner regarding the meal

3    break claim.  Instead, the Labor Code specifically notes that the administrative hearing procedure

4    for resolving wage claims is "informal."  Cal. Lab. Code § 98(a) ("It is the intent of the

5    Legislature that hearings held pursuant to this section be conducted in an informal setting

6    preserving the right of the parties.").  "In a section 98 hearing, the pleadings are limited to a

7    complaint and an answer; the answer may set forth the evidence that the defendant intends to rely

8    on, and there is no discovery process."  *Noble v. Draper*, 73 Cal. Rptr. 3d 3, 14 (Cal. Ct. App.

9    2008), *as modified* (Feb. 25, 2008) (internal citations omitted).  Thus, the Court is not convinced

10   that such hearings ever preclude litigation of wage claims.  Moreover, even assuming they can, the

11   meal break claim before the Labor Commissioner involved conduct for the period of August 2011

12   to October 2013.  *See* Dkt. No. 81-1 Declaration of McLaughlin ("McLaughlin Decl."), Ex. D at

13   251.[2]  Plaintiff's claim here relies on conduct after October 2013, and was not "actually litigated in

14   the former proceeding."  *Lucido*, 795 P.2d at 1225.[3]

15   In summary, the Court finds that Addus has not met its burden to show that collateral

16

17   [2] Addus requests that the Court take judicial notice of the Decision or Award of the California
     Labor Commissioner.  *See* McLaughlin Decl., Ex. D.  Plaintiff argues that the request is improper
18   to the extent Addus seeks to introduce the decision for the truth of the facts contained in it.  *See*
     Reply at 7.  "Judicial notice is appropriate for records and 'reports of administrative bodies.'"
19   *United States v. 14.02 Acres of Land More or Less in Fresno Cty.*, 547 F.3d 943, 955 (9th Cir.
     2008) (quoting *Interstate Nat. Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1954)).
20   Though a court may take "judicial notice of matters of public record," it "cannot take judicial
     notice of disputed facts contained in such public records."  *Khoja v. Orexigen Therapeutics, Inc.*,
21   899 F.3d 988, 994 (9th Cir. 2018) (citation and quotations omitted). The Court thus **GRANTS** the
     request as to Exhibit D to the extent of recognizing its existence as an administrative record.
22   [3] Plaintiff also argues that the Labor Commissioner's decision cannot collaterally estop Plaintiff's
     claim because "the [Labor Commissioner] lacks jurisdiction over unfair business practices
23   claims."  Reply at 7 (citing *Noble*, 73 Cal. Rptr. 3d at 14).  The Court disagrees that *Noble* bears
     the weight that Plaintiff has placed on it.  There, the court analyzed whether the Labor
24   Commissioner had jurisdiction to adjudicate claims of "fraud, negligent misrepresentation, false
     advertising, and a statutory claim of unfair business practices under the Business and Professions
25   code, all arising from defendants allegedly inducing plaintiffs to enter into an employment
     contract."  *Noble*, 73 Cal. Rptr. 3d at 12.  Finding that the California Labor Code does not give the
26   Labor Commissioner authority to adjudicate misrepresentation claims, the *Noble* court found that
     collateral estoppel did not apply to the UCL claim.  Here, Plaintiff does not bring a UCL claim
27   based on fraud, but instead alleges unfair acts contrary to provisions in the Labor Code.  *See* FAC
     at ¶¶ 115–131.  Thus, *Noble*'s determination regarding a fraud-based UCL claim does not
28   persuade the Court that all UCL claims—especially those here that are entirely derivative of Labor
     Code violations—are outside of the Labor Commissioner's jurisdiction.

1  estoppel bars Plaintiff's derivative meal break claim.

2  **C.    Class Certification Requirements as to Plaintiff's Proposed Class**

3  As noted above, Federal Rule of Civil Procedure 23(a) requires a showing of numerosity,

4  commonality, typicality, and adequacy of representation to maintain a class action.  *Mazza*, 666

5  F.3d at 588.  Addus argues that Plaintiff cannot represent direct care workers because she cannot

6  satisfy the typicality and adequacy requirements, or meet the predominance requirement under

7  Rule 23(b).

8  **i.    Numerosity**

9  Rule 23(a) requires that the putative class be "so numerous that joinder of all members is

10  impracticable."  *See* Fed R. Civ. P. 23(a)(1).  As noted, Plaintiff's proposed class consists of "[a]ll

11  current and former hourly-paid or non-exempt individuals employed" within two general

12  categories of employees:  administrative employees and direct care workers (who make up the vast

13  majority of the proposed class).  Specifically, Plaintiff notes that Addus employed 2,451 direct

14  care workers and 65 administrative employees in California during the class period.  *See* Avakian

15  Decl., Exhibit 12 at 2–3.  The Court finds that Plaintiff has sufficiently established numerosity

16  because joinder of approximately 2,516 putative class members would be impracticable.

17  **ii.    Commonality**

18  Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  A

19  contention is sufficiently common where "it is capable of classwide resolution—which means that

20  determination of its truth or falsity will resolve an issue that is central to the validity of each one of

21  the claims in one stroke."  *Dukes*, 564 U.S. at 350.  Commonality exists where "the circumstances

22  of each particular class member vary but retain a common core of factual or legal issues with the

23  rest of the class."  *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008).  "What matters to

24  class certification . . . is not the raising of common 'questions'—even in droves—but rather the

25  capacity of a classwide proceeding to generate common answers apt to drive the resolution of the

26  litigation."  *Dukes*, 564 U.S at 350 (citation omitted) (emphasis omitted).

27  Here, Plaintiff seeks to certify a class as to the remaining UCL derivative claims, which are

28  predicated on alleged meal-period, rest-break, off-the-clock, and reimbursement violations.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Plaintiff generally alleges that commonality is satisfied because all claims "involve the same

2    alleged Labor Code violations and are susceptible to common proof."  Mot. at 13.  To determine

3    whether commonality is met, the Court will start by examining the various theories Plaintiff

4    advances regarding noncompliant meal and rest periods, off-the-clock work, and required use of

5    personal cellular phones to perform work duties without reimbursement.

6         First, referring to Addus' nationwide employee handbooks, Plaintiff argues that Addus

7    maintained facially deficient meal and rest break policies, *see* Mot. at 9, 17, 22, and that the "lack

8    of compliant meal and rest period policies is a matter of common proof," *see* Reply at 14.  Addus

9    contends that it maintained separate and compliant California-specific policies, which were

10   communicated to service coordinators, who were required in turn to communicate them to direct

11   care workers.  Opp. at 14, 16; *see* McLaughlin Decl., Ex. B, Transcript of Nicole Zdeb ("Zdeb

12   Tr.") 292:7-11, 450:19-452:8, Ex 12.  Notwithstanding Addus' supporting declarations, Plaintiff

13   argues that any such policies were never communicated to hourly, non-exempt employees.  *See*

14   Mot. at 23; Reply at 13–14.  Second, Plaintiff argues that Addus maintained uniform policies of

15   discouraging putative class members from taking timely, off-duty compliant meal and rest periods.

16   Mot. at 14; Reply at 14.  More specifically, Plaintiff alleges that these uniform policies included

17   scheduling employees with insufficient time between client visits, requiring "Plaintiff and other

18   employees to " 'eat on the go' between client visits," and, with respect to administrative

19   employees, maintaining inadequate staffing and coverage.  *See* Mot. at 20; Reply at 15.  Lastly,

20   Plaintiff argues that Addus adopted a "common policy of failing to reimburse the putative class for

21   use of their personal cellular phones for work."  Mot. at 28.

22        From Plaintiff's briefing, the Court gleans that Plaintiff contends the following common

23   questions exist:  whether Addus communicated its meal and rest break policy to the class; whether

24   Addus failed to provide meal breaks for its hourly or non-exempt employees in violation of

25   "Labor Code § 512(a) and Wage Order"; whether Addus failed to provide rest breaks for its hourly

26   or non-exempt employees in violation of "Labor Code § 226.7 and Wage Order"; whether Addus

27   maintained a uniform policy forcing putative class members work "off-the-clock"; whether Addus

28   required its hourly or non-exempt employees to use their personal cell phones without

1   reimbursement; and whether any of these alleged violations constitute UCL violations.  *See id.* at

2   9–10; *see generally* FAC ¶¶ 117–131 (predicating UCL violations on underlying violations of

3   relevant Labor Code violations or applicable wage order).

4       The Court finds that as pled, Plaintiff's claims share various common questions of law that

5   satisfy the commonality requirement.  *See Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 636

6   (N.D. Cal. 2010) (finding commonality met where plaintiff raised common question of whether

7   defendant's alleged practices constituted violations of California wage and hour laws and "at least

8   some of the [relevant] facts to be analyzed . . . [were] the same").  Plaintiff's evidence that the

9   alleged policies applied to various positions on a classwide basis is not strong, but the Court finds

10  that the identified issues suffice to establish commonality.

        **iii.   Typicality**

12      Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical

13  of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3).  "The test of typicality is whether

14  other members have the same or similar injury, whether the action is based on conduct which is

15  not unique to the named plaintiffs, and whether other class members have been injured by the

16  same course of conduct."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)

17  (quotation omitted).  Under the "permissive standards" of Rule 23(a)(3), the claims need only be

18  "reasonably co-extensive with those of absent class members," rather than "substantially

19  identical."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  In other words,

20  typicality is "satisfied when each class member's claim arises from the same course of events, and

21  each class member makes similar legal arguments to prove the defendant's liability."  *Rodriguez v.*

22  *Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quotation omitted).

23      Addus argues that Plaintiff was not employed as a direct care worker during the class

24  period and that Plaintiff's experience as a service coordinator makes her claims atypical of those

25  of the proposed class.  Opp. at 8–12.  Addus points to the different nature of the job roles

26  generally and also makes arguments based on the claims raised.[4]  Plaintiff concedes that she did

United States District Court
Northern District of California

---

[4] For example, as to the meal and rest period claims, Addus argues that Wage Order 15 governs direct care workers and exempts them from California's meal and rest period requirements.  Opp.

9

United States District Court
Northern District of California

1  not work as a direct care worker during the class period, but argues that she need not have held the

2  same position as all of the putative class members. [5]   Reply at 8–9.

3       The Court acknowledges that typicality does not require a class representative for each job

4  category.  *See Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (rejecting the defendant's

5  argument in employment discrimination action that typicality required "clear documentation that

6  each job category had a class representative for each type of discrimination claim alleged").  But

7  the Court nonetheless finds that Plaintiff has not satisfied the typicality requirement as to the

8  proposed class in light of insufficient evidence that Plaintiff's experience was typical of that of the

9  class as a whole.  It is unclear whether all members of the class were even exposed to all of the

10  challenged policies.  *See Guzman v. Chipotle Mexican Grill, Inc.*, No. 17-CV-02606-HSG, 2020

11  WL 227567, at *12 (N.D. Cal. Jan. 15, 2020) (holding typicality was not satisfied in light of

12  insufficient showing that the plaintiffs' experiences were typical and noting "fundamental[]" issue

13  "whether all members of the class were even exposed to" challenged policies).  For example,

14  Plaintiff's supporting evidence includes employee declarations only from two other service

15  coordinators, who worked from the same branch as Plaintiff, and four direct care workers.  *See*

16  Dkt. No. 72-14 (Plaintiff's Compendium of Employee Declarations).  Plaintiff presents little to no

17  evidence regarding other types of administrative workers.  Instead, the limited evidence in the

18  record concerning other types of administrative workers indicates that these employees had

19

20  _____

at 9 (citing Cal. Code Regs. tit. 8, § 11150(1)(B)).  Administrative employees, like Plaintiff, are

21  governed by Wage Order 4 and are not exempt from the meal and rest period requirements.  *Id.* at
9–10 (citing Cal. Code Regs. tit. 8, § 11040(1)–(2)).  This argument suggests a possible defense to

22  liability on the merits, but does not in itself render Plaintiff Moore atypical.  Instead, "defenses
that may bar recovery for some members of the putative class, but that are not applicable to the

23  class representative do not render a class representative atypical under Rule 23."  *Barnes v. AT&T
Pension Benefit Plan-Nonbargained Program*, 270 F.R.D. 488, 494 (N.D. Cal. 2010).  The Court

24  thus is not persuaded by Addus' argument regarding Wage Order 15's application to direct care
workers.

25  [5] To the extent that Plaintiff argues that she is not an atypical representative for direct care workers
because of her previous time in that position, or because she "occasionally" filled in for home care

26  aides that could not finish their shift, the Court does not agree that these contentions are
dispositive.  Plaintiff's position prior to the class period is not relevant in assessing Plaintiff's

27  typicality as to putative class.  Plaintiff's limited performance of direct care duties (only two times
during the class period) also does not alone establish that that she is a typical member of the

28  proposed class.  The focus must be on the claims and whether they are typical of those of all class
members.

United States District Court
Northern District of California

1    different experiences than Plaintiff and were not exposed to the challenged policies.  *See* Dkt. No.

2    81-15, Declaration of Mary Nisan ("Nisan Decl."); Dkt. No. 81-12, Declaration of Jessica

3    Cambero ("Cambero Decl.").

4           For example, Mary Nisan details that prior to working as a service coordinator, she worked

5    as an office coordinator in the Modesto branch office from approximately April 2018 to March

6    2020.  Nisan Decl. at ¶ 2.  As an office coordinator, Nisan "answered phone calls, assisted with

7    printing and copying, and performed other clerical duties."  *Id.* at ¶ 3.  Nisan indicates that she has

8    "always been provided the opportunity to take all of [her] meal and rest breaks," she has "never

9    missed a meal or rest break" or had a break "interrupted or cut short."  *Id.* at ¶ 5.  She indicates

10   that as an office coordinator, she only completed two client visits that each "lasted 30 minutes or

11   less," that she "stayed clocked in during these visits," and that those client visits "did not interfere

12   with [her] ability to take [her] meal and rest breaks."  *Id.* at ¶ 7.  She details that in her two years at

13   Addus, she "never [saw] or heard of an employee in the office covering for a home care aide."  *Id.*

14   at ¶ 8.  And Nisan declares that she has "never used [her] personal cell phone for work," whether

15   in the office or on the previous two client visits she completed as an office coordinator.  *Id.* at ¶ 9.

16   She indicates that she "use[s] the office phone for any work-related calls," and used the office

17   phone or company-provided on-call cell phone for the two client visits.  *Id.*  And the other

18   declarant who previously held the administrative position of an office assistant in the Walnut

19   Creek branch office describes experiences largely similar to Nisan's, undermining Plaintiff's

20   assertion that her experiences with the challenged policies are typical of the proposed class.[6]  More

21   specifically, Jessica Cambero details that she has never missed a meal or rest break or had her

22   breaks "cut short by work," has never covered for a caregiver, either as an office assistant or

23   service coordinator, and has never used her personal cell phone for work.  *See* Cambero Decl. at

24   ¶¶ 5, 7, 8.

25

26   _____

27   [6] Plaintiff objects to the bulk of Addus' declarations on the grounds of lack of foundation, lack of
     personal knowledge, or inadmissible hearsay.  *See* Reply at 19–20.  The portions of the
     declarations the Court relies upon adequately reflect the declarant's basis for personal knowledge

28   and the foundation for the statements, and Plaintiff's hearsay objection is not well-taken at the
     class certification stage.  All of Plaintiff's objections are **OVERRULED**.

Plaintiff's citation to *Cornn v. United Parcel Service, Inc.* does not convince the Court otherwise.  *See* 2005 WL 588431  (N.D. Cal. 2005).  In *Cornn*, the proposed class included "drivers designated by UPS as package car drivers, feeder drivers, combination drivers and utility drivers."  *Id.* at *1.  UPS argued that the class should not include combination drivers and utility drivers because no named plaintiff had held those positions.  *Id.* at *7.  The court rejected this argument because there were no significant distinguishing features of these drivers, "who perform[ed] the work of a package-car or feeder driver on a part-time basis," and "there [wa]s no evidence that the challenged policies did not apply equally to all driver positions" in the proposed class.  *Id.*  This case is distinguishable because Plaintiff presents no evidence that the policies applied equally to other positions or across offices.  *See also Wilson v. TE Connectivity Networks, Inc.*, 2017 WL 1758048, at *11 (N.D. Cal. Feb. 9, 2017) ("The relevant question is whether the challenged policies and practices apply to the named plaintiff in the same way that they apply to the class members that the named plaintiff seeks to represent.").

Additionally, the Court finds that Plaintiff does not show typicality in light of a unique defense available against her.  The Court finds *Mateo v. V.F. Corp.*, 2009 WL 3561539 (N.D. Cal. Oct. 27, 2009), instructive.  In *Mateo*, the named plaintiff worked as a "keyholder" who "had management responsibilities" such as "opening and closing the store[] and setting the store's daily schedule, including the meal and rest breaks for the rest of the store's hourly employees."  *Id.* at *1.  The plaintiff alleged that "she and her co-workers had to work through their rest and meal breaks, even though they had clocked out" because the store managers instructed her that "she and other store employees could not leave the store during their meal breaks if the store was understaffed."  *Id.*  The plaintiff complained to management that "V.F. did not pay her for working off-the-clock and that employees did not receive proper meal and break periods."  *Id.*  V.F. contended that Plaintiff bore responsibility for the violations she alleged because she "disobeyed V.F. policy by failing to provide store employees with meal and rest periods."  *Id.* at *5.  Plaintiff argued that, although she was responsible for setting the daily schedule, she was "not responsible for the Labor Code violations because she was following her supervisors' instructions and company policy."  *Id.* at *4.  The court nonetheless found that because the defense "would not

United States District Court
Northern District of California

United States District Court
Northern District of California

1    apply to non-keyholder class members . . . not all putative class members would have to litigate

2    this issue." *Id.* Accordingly, the court held that Plaintiff did not satisfy typicality or adequacy.

3    *Id.* at *4–5.

4         Here, Addus similarly argues that "by virtue of her job position and own conduct,

5    [Plaintiff] bore responsibility for the very violations of which she complains." Opp. at 14. Addus

6    notes that Plaintiff scheduled the breaks for direct care workers, "trained direct care workers on

7    break requirements, [] told them to eat 'on the go' between clients," and "told home care aides

8    they had to take or return calls from the office while in the field using their personal cell phones."

9    *Id.* at 13. The parties agree that service coordinators' responsibilities "included hiring direct care

10   workers[,] training direct care workers[, and] preparing schedules for direct care workers." *See*

11   Moore Decl. at ¶ 6. Much like the plaintiff in *Mateo*, *see id.* at *4, Plaintiff argues that she cannot

12   be held liable for the Labor Code violations as an administrative employee who "acted as

13   instructed by her managers" and in line with the company's allegedly non-compliant policies. *See*

14   Reply at 11–12. The Court acknowledges that "this may be true," but similarly finds that "not all

15   putative class members would have to litigate this issue." *See Mateo*, 2009 WL 3561539 at *4.

16   Most notably, direct care workers, who make up the vast majority of the proposed class, would not

17   be required to litigate this defense. And because Addus' argument implicates the challenged

18   conduct with respect to each of the predicate claims, it could threaten to become a "focus of the

19   litigation." *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992) (finding plaintiff

20   failed to satisfy typicality because "it [was] predicable that a major focus of the litigation will be

21   on a defense unique to him"). Accordingly, the Court finds that Plaintiff has not satisfied the

22   typicality requirement.

23        **iv.   Adequacy**

24        Rule 23(a)(4) requires that the "representative parties will fairly and adequately represent

25   the interests of the class." On the question of adequacy, the Court must address two legal

26   questions: (1) whether the named plaintiffs and their counsel have any conflicts of interest with

27   other putative class members, and (2) whether the named plaintiffs and their counsel will

28   prosecute the action vigorously on behalf of the proposed class. *See In re Mego Fin. Corp. Sec.*

13

United States District Court
Northern District of California

*Litig.*, 213 F.3d 454, 462 (9th Cir. 2000).  This inquiry "tend[s] to merge" with the commonality and typicality criteria.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982).

Addus does not contest the adequacy of Plaintiff's legal counsel, who have been appointed class counsel in complex class actions, especially those involving wage and hour disputes.  *See* Dkt. Nos. 72-16, Declaration of Stanley D. Saltzman; 72-17, Declaration of Edwin Aiwazian.  But Addus argues that Plaintiff cannot meet the adequacy requirement.  More specifically, as previously noted, Addus contends that Plaintiff is responsible for the conduct at issue.  The Court finds that this defense that is unique to Plaintiff, and potentially the small subset of the class that consists of service coordinators, defeats adequacy.[7]  *See Mateo*, 2009 WL 3561539, at *5. ("[T]he presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation.") (citing *J.H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*, 628 F.2d 994, 999 (7th Cir.1980)).  The Court thus finds that Plaintiff has not sufficiently established that she can fairly and adequately represent the interests of the proposed class.

\*       \*       \*

Having reviewed the Rule 23(a) requirements, the Court finds that Plaintiff has not shown typicality or adequacy as to the proposed class.[8]

### D.    Class Certification Requirements as to a Class of Administrative Workers

Though Plaintiff fails to show that certification of the proposed class is warranted, the Court considers whether she has done so as to a narrowed class consisting of administrative workers.  Addus argues that Plaintiff cannot establish predominance as to such a class.  Opp. at 19–25.

---

[7] Plaintiff's contentions that she was not a supervisor or manager, and that she complained about the alleged violations, do not change the Court's conclusion.  *See Mateo*, 2009 WL 3561539, at *4–5 (finding plaintiff who allegedly followed supervisors' instructions in making daily schedules was nonetheless an atypical and inadequate representative in light of defense inapplicable to other class members with "no power over" daily schedules).

[8] Because Plaintiff has not met the requirements of 23(a) as to the class she proposed, the Court need not reach the Rule 23(b) factors.

### i.   Numerosity & Commonality

As Addus employed 65 administrative employees during the class period, *see* Avakian Decl., Exhibit 12 at 2–3, the Court finds that Plaintiff has sufficiently established numerosity. "[C]ourts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members." *Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 605–6 (N.D. Cal. 2014) (citation omitted). The Court thus finds that numerosity is satisfied because joinder of 65 class members would be impracticable.

The Court also finds that Plaintiff has sufficiently established commonality because Plaintiff's claims share the common questions of law discussed above in Section III(C)(ii).

### ii.   Typicality

The Court finds that Plaintiff has not satisfied the typicality requirement as to a class of administrative workers as a whole. As previously discussed, Plaintiff provides limited evidence regarding administrative workers beyond service coordinators, and the limited evidence in the record indicates that other types of administrative workers had different experiences than Plaintiff and were not exposed to the challenged policies in the same way. *See* Nisan Decl.; Cambero Decl. Accordingly, Plaintiff fails to show that her experiences as a service coordinator were typical of those of other types of administrative workers, and the Court finds that the typicality requirement is not met.

### iii.   Adequacy

The Court finds that Plaintiff satisfies the adequacy requirement as to a class of administrative workers. As noted, Addus does not contest the adequacy of Plaintiff's legal counsel. Similarly, Addus does not raise, nor is the Court aware of, any possible conflicts of interest among named Plaintiffs and other putative class members who held administrative positions.

### iv.   Predominance

"The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation marks omitted). The Supreme Court has defined an individual question

United States District Court
Northern District of California

as "one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* (citation and internal quotation marks omitted; brackets in original).  This "inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.* (citation and internal quotation marks omitted).  The Supreme Court has made clear that Rule 23(b)(3)'s predominance requirement is "even more demanding" than the commonality requirement of Rule 23(a).  *See Comcast*, 569 U.S. at 34 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997)).

Addus argues that Plaintiff does not establish that common questions predominate as to the meal-period, rest-period, off-the-clock, and reimbursement claims for administrative employees. Opp. at 19–25.  As noted, Plaintiff argues that Addus maintained uniform policies of discouraging the putative class from taking timely and compliant off-duty meal and rest periods, including by scheduling insufficient time between client visits, requiring "Plaintiff and other employees to 'eat on the go' between client visits," and maintaining inadequate staffing and coverage.  *See* Mot. at 14, 20; Reply at 14–15.  Plaintiff also contends that Addus adopted a "common policy of failing to reimburse the putative class for use of their personal cellular phones for work." Mot. at 28.

Addus' declarations reflect that administrative employees across different branches were able to take uninterrupted breaks because they were provided coverage from other staffed employees.  *See*, *e.g.*, Dkt. No. 81-16, Declaration of Shelly Rivas ("Rivas Decl.") at ¶ 5 ("I have never missed a meal or rest break, and my meal and rest breaks are never interrupted or cut short because there is always someone else working to cover my position while I am on my breaks."); Nisan Decl. at ¶ 5 (same); Cambero Decl. at ¶ 5 (same); Dkt. No. 81-10, Declaration of Jordyn Balken ("Balken Decl.") ¶ 6 (same).  Plaintiff admits that she has no knowledge of meal break practices at other offices, *see* Moore Tr. at 212:24-213:15, and she presents no evidence of administrative employees at other branches not receiving meal periods or working during meal periods.  Further, Plaintiff acknowledges that she has no knowledge of the level of support at other

16

offices, apart from the fact that she did "know that Modesto had more support" than her branch. *See* Moore Tr. at 213:17-24, 215:7-14.  Additionally, as to the reimbursement claim, Addus provides declarations from several administrative employees holding different positions across different branches indicating that they have never used their personal cell phone for work.  *See* Nisan Decl. at ¶ 9, Cambero Decl. at ¶ 8, Balken Decl. at ¶ 9, Rivas Decl. at ¶ 7; Declaration of Amanda Stark ("Stark Decl.") at ¶ 8; Declaration of Dorothea White ("White Decl.") at ¶ 8.  For example, Dorothea White, an employee who has worked as an office coordinator in Modesto "since approximately 2007," detailed that she "is able to use the office phone for all of [her] work duties" and that she "ha[s] never been told that [she] was required to have or use a personal cell phone to work for Addus."  White Decl. at ¶¶ 2, 8.

The Court agrees that individual questions predominate as to the meal-period, rest-period and off-the-clock claims.  For example, Plaintiff claims that inadequate staffing and coverage led to the alleged violations for administrative employees.  But the evidence suggests that there is variation across branches with respect to staffing and coverage.  *See*, *e.g.*, Balken Decl. at ¶ 8 (service coordinator in Butte explaining that to his knowledge, service coordinators in that office do not cover for direct care workers because office ensures there are "additional caregivers available to cover a client visit in the situation where a caregiver is unable to provide care that day"); Rivas Decl. at ¶ 5 (service coordinator in Modesto noting she "ha[s] never missed a meal or rest break, and [her] meal and rest breaks are never interrupted or cut short because there is always someone else working to cover [her] position while [she is] on [her] breaks.").  Accordingly, to assess Plaintiff's claims, the Court would need to make individual inquiries concerning the staffing levels at the various branches over the class period, and how those levels impacted a given employee's schedule.  *See Chavez v. Lumber Liquidators, Inc.*, No. CV-09-4812 SC, 2012 WL 1004850, at *8 (N.D. Cal. Mar. 26, 2012) (denying certification of meal-period class because individualized questions concerning staffing requirements and whether certain stores "deviated from" the written policy predominated); *Mateo*, 2009 WL 3561539, at *6 (finding that individual issues predominated where plaintiff claimed that employees had to work off-the-clock during meal periods "due to lack of minimum staffing").  Plaintiff points to last-minute coverage that service

coordinators were required to provide for direct care workers as an "understaffing" policy that led to break violations. *See* Reply at 15–16. But the job duties of various administrative positions differ (and differ even within the position of service coordinator), in ways that would influence an employees' ability to take breaks, since certain administrative employees either conduct no field work or their field work is limited to the visits they themselves schedule. *See*, *e.g.*, Nisan Decl. at ¶¶ 2–3, 7 (has "never done a client visit as a service coordinator" and does not anticipate doing any in the future); Cambero Decl. at ¶¶ 6–7 (has "never covered for a caregiver, either as an office assistant or a service coordinator," and schedules her client visits to allow sufficient time for breaks). And as noted, other administrative positions entail discrete job duties within the office, such as filing paperwork and preparing and processing payroll. *See* McLaughlin Decl., Exhibit B at 152:24-153:19, 154:19-25.

Even putting aside differences in job duties between administrative workers, and considering those service coordinators whose role included client visits, the Court finds that whether, and why, a particular employee experienced a meal-break, rest-break, or off-the-clock violation would depend on other individualized, fact-specific inquiries, such as the employee's personal preferences,[9] client volume,[10] and whether the time allotted allowed sufficient time for a break depending on the location and distance between clients and traffic conditions on a particular day. *See Washington*, 271 F.R.D. at 641–42 (denying certification of meal and rest break claims because "the critical question of why [meal and] rest breaks were not taken . . . will necessitate an

---

[9] For example, Addus notes that Plaintiff attested to taking frequent breaks, usually lasting five to seven minutes, to smoke cigarettes "at least four times" an eight-hour shift. Opp. at 23 (citing Moore Tr. at 364:1-23, 366:20-367:2). Addus reasons that Plaintiffs seemingly chose to split her breaks this way, and that "any argument to the contrary would merely illustrate the individual credibility assessments that would overwhelm any common questions." Opp. at 23. Plaintiff did not address this argument in her reply.

[10] Plaintiff's own testimony indicates that she performed 98% of the visits for her office, while the other service coordinators in her office provided relatively limited client visits, if at all. McLaughlin Decl., Ex. A, Transcript of Mary Moore ("Moore Tr.") at 167:12-168:9, 171:20-172:13. Plaintiff also noted that Kay, another service coordinator at her branch, always left the office for one hour at noon to take her meal breaks. *Id.* at 210:10-211:11. Plaintiff explained that "at her initial start," Kay had told their supervisor, Laura Stinson, that she would leave the office every day from noon to 1:00 p.m, and Plaintiff was not aware of Kay being told that she could not do so. *Id.* at 210:21-211:11. This evidence seemingly undercuts Plaintiff's argument that any policy leading to noncompliant meal periods was uniformly applied even within her own office.

individualized inquiry into each employee's particular circumstances"); *Roth v. CHA Hollywood Med. Ctr., L.P.*, No. 2:12-CV-07559-ODW, 2013 WL 5775129, at \*9 (C.D. Cal. Oct. 25, 2013) (denying certification of meal-period and rest-period claims in light of "individual inquiries . . . to determine if, when, and why a [putative class member] did or did not take all mandated breaks"). Accordingly, Plaintiff has not adequately demonstrated that the meal-period, rest-period and off-the-clock claims can be decided by common proof given the predominance of several fact-specific inquiries.[11]

Similarly, the Court finds that common issues do not predominate as to the reimbursement claim. Plaintiff contends that Addus adopted a "common policy of failing to reimburse the putative class for use of their personal cellular phones for work." Mot. at 28. Addus' evidence indicates that some administrative employees work only from the office, where they are provided with an office phone, *see, e.g.*, Rivas Decl. at ¶ 6–7 (has never used personal cell phone as a service coordinator), and that others who perform client visits have never needed to use their personal cell phone for work, *see, e.g.*, White Decl. at ¶ 6, 8 (prefers to schedule four to six clients visits once per week, and has "never used" personal cell for work either in office or in the field).

---

[11] Plaintiff's reliance on Addus' national handbooks does not change the Court's finding that the predominance requirement is not satisfied. As previously noted, Addus has introduced evidence that it adopted a formal California-specific policy. *See* Zdeb Tr. 292:7-11, 450:19-452:8, Ex. 12; Dkt. No. 81-6, Declaration of Cindy Chaix ("Chaix Decl.") at ¶ 3 (agency director noting that she reviews California policy with service coordinators that she hires); *see, e.g.*, Balken Decl. ¶ 4 (noting receipt of a handbook and separate paperwork regarding company's California meal and rest break policies); Cambero Decl. ¶ 4 (noting receipt of California meal and rest policies at orientation); *see also York v. Starbucks Corp.*, No. CV 08-07919 GAF PJWX, 2011 WL 8199987, at \*23–24 (C.D. Cal. Nov. 23, 2011) (noting that for question of "why there may have been violations" of wage and hour requirements "in the face of" California-specific policies, plaintiff "failed to establish common patterns and practices that could affect any of the proposed sub-classes as a whole"); *Ordonez v. Radio Shack, Inc.*, No. CV 10-7060-CAS JCGX, 2013 WL 210223, at \*8 (C.D. Cal. Jan. 17, 2013) ("[C]ourts—including this one—have rejected plaintiff's argument that a common question capable of resolution through a common answer is available when a defendant's policy is facially legal."); *Wilson*, 2017 WL 1758048, at \*7 (noting defendants "defeat[e]d" plaintiff's argument that defendants "failed to adopt meal and rest break policies . . . by providing evidence that they have formal meal and rest break policies"). Plaintiff contends that any such policies were never communicated to putative class members. But the resolution of this argument would again involve predominantly individual inquiries regarding whether and how each employee learned of these policies. *See, e.g.*, White Decl. ¶ 4 (noting supervisors have "consistently reinforced [meal and rest break policies] by reminding" her to take all breaks); Nisan Decl. ¶ 4 (same); Cambero Decl. ¶ 4 (noting receipt of California meal and rest policies at orientation). Accordingly, Plaintiff's claim about the national handbooks does not advance her argument that the underlying violations can be shown by a common proof.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Plaintiff has stated that she was required to transfer office calls to her personal cell phone if away

2    from the office.  Moore Decl. at ¶ 20.  Addus correctly notes that rather than pointing to a policy

3    for administrative employees, Plaintiff alleges that a particular supervisor, Linda Stinson,

4    instructed her to transfer office calls to her personal cell phone, *see* Moore Tr. 185:11-186:1, but

5    there is no evidence that Stinson or another supervisor instructed other administrative employees

6    in other offices to do so.  *See* White Decl. at ¶ 8 (noting she "ha[s] never been told that [she] was

7    required to have or use a personal cell phone to work for Addus").  To assess Plaintiff's

8    reimbursement claim, the Court would need to engage in individualized inquiries regarding

9    whether and why each employee used a personal cell phone for work, and whether that use was

10   necessary.  *See Cochran v. Schwan's Home Serv., Inc.*, 228 Cal. App. 4th 1137, 1145, 176 Cal.

11   Rptr. 3d 407, 413 (2014) ("To show liability under section 2802, an employee need only show that

12   he or she was required to use a personal cell phone to make work-related calls, and he or she was

13   not reimbursed."); *see also Dugan v. Ashley Furniture Indus., Inc.*, No. SACV161125PAFFMX,

14   2016 WL 9173459, at *4 (C.D. Cal. Nov. 29, 2016) (denying certification of cell phone

15   reimbursement claim because "the determination of necessity would require" individual inquiries

16   into factors such as each putative class member's "motivation" in using a personal cell phone).

17   Accordingly, the Court finds that Plaintiff has not satisfied the predominance requirement as to a

18   class of administrative workers for any of the derivative claims.

19                                    *        *        *

20       The Court finds that Plaintiff does not establish typicality or predominance for a narrowed

21   class of administrative workers.  And the Court finds that Plaintiff does not establish

22   predominance for even a class limited to service coordinators for the same reasons detailed above.

23   //

24   //

25   //

26   //

27   //

28   //

## IV.     CONCLUSION

For all these reasons, the Court **DENIES** the motion for class certification.  The Court **SETS** a telephonic case management conference for April 6, 2021, at 2:00 p.m.  The Court **DIRECTS** the parties to meet and confer and submit a joint case management statement by March 30, 2021.  All counsel shall use the following dial-in information to access the call:

Dial-In:  888-808-6929;

Passcode:  6064255

For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines.

**IT IS SO ORDERED.**

Dated:  3/17/2021

HAYWOOD S. GILLIAM, JR.
United States District Judge